liDECUIR, Judge.
This is an appeal by defendant Gerald Bruno from the judgment of the trial court in favor of class plaintiffs and individual plaintiffs, Craig Stokes, Vera Stokes, Clayton Stewart, Thelma Stewart, Julius M. Caleotte, Ruth Caleotte, Ricky Brown, Laura Brown, Herbert Hall, and Anita Hall, individually and on behalf of Point Cotile Parks Association, Inc., declaring the sale of certain property consisting of 5.45 acres from Point Co-tile Parks Association, Inc. to Gerald Bruno, Phyllis Lear Bruno, and Michael M. Wright, to be ultra vires and void.
The only defendant appealing is Bruno. He contends that the trial court erred in finding that he did not have authority to sell the property at issue and in failing to find that the sale and purchase of said property was in good faith and thus not a breach of his fiduciary duty. We affirm.
Point Cotile Parks Association, Inc. is a nonprofit, non-stock corporation established by developers of the Point Cotile Subdivision in Rapides Parish. The corporation’s membership is limited to owners of a lot or building site. On February |213, 1990, according to minutes of the meeting on that date, a resolution was adopted designating Bruno and Michael Wright, two members of the board of directors of the corporation, as “legal signers” for the corporation. Furthermore, the minutes of the meeting of that date indicate that the board of directors voted to accept the recommendation of the Common Grounds Committee to adopt resolutions to authorize the sale of “common ground” property as detailed on an attached drawing. This drawing or map of the Point Cotile Subdivision was entered into evidence. The Common Grounds Committee Report, also entered into evidence, indicates that property values for the various tracts were established through comparative values and consultation with a realtor. Plaintiffs contend that the values for the various tracts of the “common ground” which were purportedly authorized for sale by the board on February 13, 1990, are indicated on this map. Bruno testified at trial that at the time of this meeting, the board members present were himself, Diana Brenson, Patsy Coleman, Michael Wright, and Ed Brightwell.
The record reflects that in April 1990, the corporation sold an unrelated portion of property to a Robert Powell. This sale was executed on behalf of the corporation by Bruno and Wright. Attached to this sale is a resolution dated April 9,1990, which reads as follows:
*390 G.C. Bruno and Michael Wright, Directors of this corporation, be and they are, it requiring both of them, are hereby authorized and empowered, for and on behalf of this Corporation to sell, transfer, assign, convey, lease and/or contract for the sale, transfer, assignment, and/or lease to any or all person or persons, corporations, partnerships or legal entities, with all legal warranties, all or any part of the real, personal or mixed property of said Corporation for such prices and upon such terms and conditions that they may see fit and they are authorized, instructed and empowered to receive the price of such sale or lease and to grant receipts and acquit-tances therefor and to execute all documents and papers incidental to or necessary for the effectuation of the powers enumerated and recited herein.
IsBruno in his trial testimony agreed that the language of this resolution was very “liberal.” Bruno testified he did not recall whether he typed the resolution or whether his wife or Wright typed it, but that he carried the resolution to Patsy Coleman, the corporation secretary, for certification. This resolution was never read or adopted at a board of directors meeting. Bruno testified that this resolution was used in all sales consummated after 1990.
Bruno contends that the purpose of the minutes of the February 1990 board meeting was to grant him and Wright authority to act on behalf of the corporation in all sales transactions including the 5.45 acres in dispute to “anyone,” including himself and Wright, if fair. Bruno also contends that he was the official corporate appraiser of the land. At the time of the sale of the 5.45 acres in February 1996 to Bruno, his wife and Wright, the board of directors consisted of Patsy Coleman, Becky Dauzat, Craig Stokes, Wright, and Bruno. The record reflects that the board was not informed of this sale and that Bruno’s and Wright’s purported authority to act on behalf of the corporation in selling the property to themselves was evidenced by attachment of a copy of the same resolution attached to the Powell sale. Upon learning of this sale, plaintiffs filed suit.
 The trial court found there was no valid formal resolution authorizing the sale of the property at issue. The record clearly supports such a finding. The authority to alienate immovable property must be in writing and given expressly. La.Civ.Code arts. 2993, 2996. We adopt the trial court’s reasons as follows:
We next look to the authority for Bruno to sell the property. Mr. Bruno chose his words carefully in testimony to convey he acted not only with the authority, but the full support of the Association members in his sale. This was not so. Clearly Mr. Bruno was a driving force in the organization and was responsible for a resurgence in its activity. However, even in a loosely organized corporate structure, certain requisites are necessary. There are no valid formal resolutions authorizing the sale of the captioned property. The boot strapping \jmethod of getting a general agreement tied to an exhibit showing values then drafting corporate authority pursuant to that, agreement which is then expanded to a general authority to sell property at any price deemed appropriate is insufficient to support the present sale. Association members decided the aspirational prices would be acceptable and proceeded with sales that benefited the group. The express provisions of the purported authorization dealt with sales of property pursuant to the attached drawing on Common Grounds Committee Report. A deviation as significant as presented is clearly outside the real, apparent or perceived authority of Mr. Bruno. There was never a resolution accepted by the Corporation authorizing Mr. Bruno and/or Mr. Wright authority to negotiate and execute the sale in question.
The property ultimately sold to Bruno and Wright had not sold for several year [sic]. It still served a function to the Association by being held as a common ground. Since obviously significant timber was sold, the additional six years’ growth would have continued to increase the value of the property that may or may not have been realized through subsequent active marketing efforts. There was no evidence of such subsequent active marketing ef *391 forts to sell the lots and back acreage together.
(Emphasis added.)
Likewise, we find defendant’s contention that the trial court erred in finding that he had breached his fiduciary duty to the corporation to be without merit. The trial court stated:
No formal process for setting the sales price of this property was followed. Apparently Mr. Bruno just decided a value for the property that was less than the values set in the exhibit. He did his own form of appraisal, set a value without any consultation of the common grounds committee and apparently worked under a perceived apparent authority he could set values and complete sales on his own. The previously established values of the all the properties to be sold were not the “pie in the sky” values set, this was the only property sold at significantly reduced price. Mr. Bruno did not see a conflict in his setting the price for the Association, or any need to inform the Board of the pending sale. I am not swayed by Mr. Bruno’s testimony that he was not aware there was some conflict. Mr. Bruno apparently would allow suggestion or innuendo to be accepted as fact. This was apparent from his testimony as to education, profession and qualifications. I am convinced he was aware of the personal benefit to himself at the expense of the Association. Whether he was, or felt, justified for all of his efforts is not a issue for consideration in the present ease.
This brings us to the issue of fair dealing and fiduciary duty to the Association. This apparently was a clear case of self dealing. Just Isbecause no one had complained in the past does not mean that he has an apparent or real authority to purchase the property himself. He should have a duty to disclose to the Corporation several items. First that the sale consummated was the whole tract, not just the first lots as had been offered in prior sales. The valuations placed on the property, including the back acreage, was significantly less than the original proposal for just the lots. Next he had a duty to disclose to the Corporation the potential for sales of timber, as well as the fact that the revised values he was negotiating with himself on behalf of the Corporation were based on his own determinations and no outside source. Once he took the position of evaluator of the land, he would be barred by fiduciary duty from consummating the sale without disclosing the reduction in price, offering an opportunity for other Association members to purchase, or make an effort to market the entire tract of land, as opposed to just the front lots. By adopting the conventional wisdom that only the front lots would be of value, he omitted to investigate the potential of purchasers not interest [sic] in developing, but preserving. Julian Combs, the adjoining neighbor of the back acreage liked the privacy and solitude and specifically stated the “thickness of the woods” was appealing to him. Mr. Bruno and Mr. Wright owed a fiduciary to the Corporation to maximize the return and the mere fact that a portion of the property had not sold at the original requested prices did not give him the unilateral authorization to add more land, reduce the price and then purchase themselves without disclosure.
Mr. Bruno apparently felt he was authorized to determine what was best for the Association and act accordingly. Review of the documents and witnessing the testimony convinced me that he knew was getting a good deal and that he felt he was justified in being recipient of such a good deal. He clearly did not have the authority, was probably aware of that fact. In essence he tried to “pull a fast one”. The value of the property, with timber, greatly exceeded the value of the consideration and terms he set for himself, and accordingly, the Court orders the sale be rescinded. The sale was not properly authorized by the Corporation and the sale constituted breach of the fiduciary Mr. Bruno owed to the Corporation. The Court orders the property be transferred back to the Corporation.
Regarding land values, the trial court further stated:
The unnecessary colorful characterization of Mr. Hargis’ testimony did little to lessen the logic of his appraisals. His *392 comparables and assumptions include properties opposing appraiser, Robert Wolf omitted. The fact that retained appraisers choose difference comparables and different methods to arrive at figures is of no surprise to this Court. While Mr. Hargis’ appraisal may have been slightly high, Robert Wolfs was correspondingly slightly low. It is interesting that even Mr. Bruno’s own appraiser, Mr. Wolf, placed the value of the property at more than he paid, before selling the timber. It is also interesting to note that the “aspirational” prices set many years earlier had been met with the other portions of property which were more actively marketed. The lapse of |6time would not have decreased the value and there was apparently very little active marketing effort for the property in question, especially configured as it was in the questioned sale. This suit is for rescission of the sale, not for additional compensation, and the Court does not need to find an exact figure. The Court finds clearly that the value of the property 'was well in excess of the price Defendants paid.
(Emphasis added.)
Based upon our review of the record evidence, we find no error in the trial court’s findings.
The judgment of the trial court is affirmed. Costs of appeal are assessed to defendant-appellant.
AFFIRMED.